IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID BAUGUS, | ) | Case No. 03-7731 |
| Plaintiff, | ) | Judge Carr |
| v. | ) | **MOTION *IN LIMINE* TO EXCLUDE VIDEOTAPE ENTITLED "RAILROAD WORK"** |
| CSX TRANSPORTATION, INC., | ) | |
| Defendant. | ) | |

\* \* \*

Defendant, CSX Transportation, Inc. (hereinafter referred to as "CSXT"), by and through counsel, Anspach Meeks Ellenberger LLP, hereby moves this Court for an Order *in limine* excluding from evidence at trial the videotape identified by Plaintiff as "Railroad Work." For the reasons set forth more fully in the attached memorandum, the "Railroad Work" videotape is not relevant to the allegations set forth in Plaintiff's Complaint. Further, any probative value the "Railroad Work" videotape may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury.

ANSPACH MEEKS ELLENBERGER LLP

By: /s/ Robert M. Anspach
Robert M. Anspach (0017263)
Ranspach@anspachlaw.com
J. Randall Engwert (0070746)
Jrengwert@anspachlaw.com
300 Madison Ave., Suite 1600
Toledo, OH  43604-2633
(419) 246-5757
Attorneys for Defendant
CSX Transportation, Inc.

## MEMORANDUM IN SUPPORT

### I. Factual Background.

Plaintiff alleges that he was injured at approximately 1:30 p.m. on January 17, 2003, while working at CSXT's facility in Marysville, Ohio. Plaintiff alleges he injured his right shoulder while attempting to open a radial end door on a multi-level railcar used to transport new automobiles from the Honda facilities in Marysville and East Liberty, Ohio. More specifically, Plaintiff alleges that simultaneously both an accumulation of ice/snow and the radial end door's anti-theft device caused the door to jam which jarred Plaintiff's right shoulder. Plaintiff returned to work for two days after the incident, but has not returned to work since January 22, 2003.

CSXT's operations at Marysville and East Liberty, which are located within several miles of one another, include: (1) the receipt of empty multi-level railcars; (2) pre-inspection of the empty railcars which includes opening the doors at both ends of the railcars; (3) inspection of the railcars both inside and out; (4) repair of any defects found on the railcars including routine maintenance; (5) "shop listing" those railcars requiring more than a light repair; (6) moving all cars inspected, maintained and repaired to the loading ramps; (7) receiving loaded railcars to prepare for departure under power of a locomotive. See Affidavit of Jeffrey Ray Hensley, attached hereto as Exhibit A.

Sometime after Plaintiff's alleged injury and after Plantiff was found to be medically disabled from working as a carman by Dr. Habusta, his treating physician, Plaintiff entered upon CSXT's facilities in Marysville and East Liberty along with former CSXT employees Dennis Boesken and Charles Plantz. All three participants are or were represented by David Lockard and are or were pursuing injury claims against CSXT. The purpose of the unauthorized entry upon CSXT's property was to produce the "Railroad Work" videotape. Plaintiff acted as the videographer while Dennis

Boesken and Charles Plantz engaged in various activities on CSXT property.

The "Railroad Work" videotape includes approximately 15 minutes of footage of Dennis Boesken and Charles Plantz opening and closing railcar doors, climbing up and down railcars, stowing automobile wheel chocks within railcars (while the videographer was within the railcars), replacing a railcar brake shoe and installing and removing an end of train device. The videotape also includes footage taken from within an automobile while driving through the loading ramps on property owned by Honda. Not one of the three individuals received permission to enter upon CSXT's property to engage in the activities described above. In fact, the videotape was made under cover of darkness.

Additionally, and perhaps most importantly, at the time the videotape was made Plaintiff was medically unqualified to perform his job duties. Dr. Habusta declared Plaintiff medically disabled from engaging in his duties as a carman on January 23, 2003. However, Plaintiff apparently was fit enough to enter upon CSXT's property for the specific purpose of producing a self-serving videotape under cover of darkness. Not only was Plaintiff trespassing, but he was also apparently climbing upon and within CSXT railcars after Dr. Habusta found Plaintiff unfit to engage in such activities.

## II. The "Railroad Work" Videotape Is Not Relevant To The Allegations Set Forth In Plaintiff's Complaint.

Federal Rule of Evidence 401 states:

> 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Federal Rule of Evidence 402 states:

3

>All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

The "Railroad Work" videotape is submitted by Plaintiff as representative of his daily activities at the Marysville and East Liberty facilities. Regardless of whether the 15 minutes of footage accurately reflects Plaintiff's typical 8 hour workday, the videotape is not relevant to the allegations set forth in Plaintiff's Complaint.

Plaintiff alleges a single traumatic incident occurring on January 17, 2003 at approximately 1:30 p.m. Plaintiff's alleged incident involved a single railcar identified by Plaintiff as car number TTX800828. Plaintiff alleges that car number TTX800828 had accumulations of ice and/or snow on the car and within the radial end door's track. Plaintiff alleges that the radial end door he was attempting to open at approximately 1:30 p.m. jammed because of both ice/snow in the door's track and a defect in the door's anti-theft device.

The "Railroad Work" videotape contains various edited segments. The recording was made at night several months after Plaintiff's alleged incident. The videotape does not depict the same weather or lighting conditions as Plaintiff experienced on January 17, 2003. The videotape does not depict car number TTX800828. The videotape does not contain footage of railcars covered with ice/snow or an anti-theft device, both of which Plaintiff alleges simultaneously caused the end door to jam. Simply put, the videotape does not depict the scenario in which Plaintiff alleges he was injured. Rather, the "Railroad Work" videotape contains dramatized segments of trespassers engaged in activities that Dennis Boesken and Charles Plantz allege caused them **occupational** injuries. For these reasons, the "Railroad Videotape" is not relevant to the allegations contained in

4

Plaintiff's Complaint and must be excluded from use at trial.

### III. The "Railroad Work" Videotape Does Not Fairly And Accurately Depict The Daily Activities Encountered By Plaintiff On January 17, 2003.

Federal Rule of Evidence 403 states:

> Although relevant, **evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury,** or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. (Emphasis added.)

The "Railroad Work" videotape is an unfair misrepresentation of the activity Plaintiff engaged in at approximately 1:30 p.m. on January 17, 2003. Of the 15 minutes of footage, less than 60 seconds shows either Dennis Boesken, or Charles Plantz opening radial end doors. During that 60 seconds, Charles Plantz opens a radial end door and then climbs upon the first deck of a tri-level railcar. Mr. Plantz then begins to pound away with a sledge hammer at the base of the adjacent radial end door. It would appear that Mr. Plantz is pounding with the sledge hammer in an effort to open the door, but due to the lighting and the lack of any commentary one cannot easily decipher the purpose of his activities. Regardless of Mr. Plantz' purpose, the activity depicted is not "usual" activity of CSXT carmen at Marysville and East Liberty. Affidavit of Jeffrey Ray Hensley ¶¶ 16 and 17. Of the remaining 14 minutes of footage, not one segment even remotely depicts the activity Plaintiff alleges caused his injuries. Furthermore, the segments depict activities that are not "typical" of the carmen at the Marysville and East Liberty facilities. Affidavit of Jeffrey Ray Hensley.

Should the Court find the "Railroad Work" videotape relevant, the Court must still preclude its presentation to the jury as any probative value the videotape may have is substantially outweighed by its prejudicial effect. The videotape does not accurately depict the activity Plaintiff alleges caused

5

his injury. In fact, the vast majority of the videotape contains footage entirely unrelated to Plaintiff's factual allegations. Furthermore, the "actors" depicted in the videotape are engaged in activities that are not typical of carmen at Marysville and East Liberty. Affidavit of Jeffrey Ray Hensley, ¶¶ 27 and 28. Because the footage contained in the videotape is wholly unrelated to Plaintiff's factual allegations and is not demonstrative of the typical work day of carmen at Marysville and East Liberty CSXT will be unfairly prejudiced by its presentation at trial.

Additionally, presenting the "Railroad Work" videotape will only serve to confuse and mislead the jury. Approximately 14 minutes of the 15 minute videotape contain footage wholly unrelated to Plaintiff's factual allegations. Presentation of this footage will only mislead the jury and confuse the issue of whether the radial end door jammed at around 1:30 p.m. on January 17, 2003 as Plaintiff alleges. For these reasons, the "Railroad Work" videotape must be excluded pursuant to Fed. R. Evid. 403.

### IV. The "Railroad Work" Videotape Should Be Excluded Because Plaintiff Failed To Comply With Fed. R. Civ. P. 34 In Procuring The Videotape.

Plaintiff, Dennis Boesken and Charles Plantz did not receive CSXT's permission prior to entering upon CSXT's property to produce the "Railroad Work" videotape. In fact, Plaintiff and Charles Plantz were off work at the time due to their alleged injuries. Dennis Boesken was not "on the clock" when the videotape was produced. The "Railroad Work" videotape should be excluded because Plaintiff failed to comply with Fed. R. Civ. P. 34 prior to entering upon CSXT's property to produce the videotape.

Fed. R. Civ. P. 34 permits a party to enter upon the land of an opposing party by serving a

6

request upon that party. Fed. R. Civ. P. 34 further requires that such a request specify a reasonable time, place and manner of making the inspection and performing any related activities. The party upon whom the request is served has twenty-eight days to respond or object.

Here, Plaintiff did not serve CSXT with a request to enter upon its land for the purpose of producing the "Railroad Work" videotape. Indeed, Plaintiff provided no notice to CSXT that he intended to conduct a site inspection with the purpose of producing a videotape for use at trial, nor did he receive permission from CSXT to enter upon CSXT's property. Simply put, Plaintiff, Dennis Boesken and Charles Plantz trespassed upon CSXT's property.

CSXT was not afforded an opportunity to have counsel and/or a representative present at the site inspection to observe the activities of Plaintiff, Mr. Boesken and Mr. Plantz and the location and condition of the various railcars upon which the three individuals engage in various activities. CSXT is now prejudiced in that it cannot confirm or deny the depictions contained in the videotape, or Plaintiff's description of the events.

Since Plaintiff failed to comply with the Federal Rules of Civil Procedure, trespassed upon CSXT's property and deprived CSXT of the opportunity to assess firsthand the locations, railcars and activities depicted in the videotape, the Court should sanction Plaintiff's activity and discourage such dangerous conduct in the future by excluding the "Railroad Work" videotape at trial.

## V. Conclusion.

As the Court will no doubt determine, the vast majority of the footage contained in the "Railroad Work" videotape is unrelated to the factual allegations set forth by Plaintiff. For this reason the "Railroad Work" videotape is inadmissible and should be excluded from the trial of this matter. Because the footage contained in the videotape does not accurately depict the factual allegations of Plaintiff, presentation of the videotape will only mislead the jury and confuse the issues. Finally, the Court should sanction Plaintiff's unlawful trespass upon CSXT's property and utter failure to comply with the Federal Rules of Civil Procedure by excluding the "Railroad Work" videotape from trial.

Respectfully submitted,

ANSPACH MEEKS ELLENBERGER LLP

By: /s/ Robert M. Anspach
Robert M. Anspach (0017263)
Ranspach@anspachlaw.com
J. Randall Engwert (0070746)
Jrengwert@anspachlaw.com
300 Madison Ave., Suite 1600
Toledo, OH 43604-2633
(419) 246-5757
Attorneys for Defendant
CSX Transportation, Inc.

## CERTIFICATE OF SERVICE

This is to certify that the foregoing **Motion *In Limine* To Exclude Videotape Entitled "Railroad Work"** was filed electronically with the Court on September 14, 2004. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                            ANSPACH, MEEKS & NUNN, L.L.P.

                                      By:    /s/ Robert M. Anspach
                                                  Robert M. Anspach   (0017263)

                                                  Attorneys for Defendant
                                                  CSX Transportation, Inc.

F:\CSX\Baugus\Pleadings\Limine videotape.wpd

# EXHIBIT A

# AFFIDAVIT OF JEFFREY RAY HENSLEY

State of Ohio        )
                     ) :SS
County of Lucas      )

I, Jeffrey Ray Hensley, having been first duly sworn according to law, state of my own free will and upon personal knowledge as follows:

1. That I am an adult over age eighteen and have personal knowledge of the facts and matters stated herein.

2. I employed by CSX Transportation, Inc., ("CSXT"), Clifton Forge, VA, as a General Foreman in the CSXT Mechanical Department.

3. I began my employment with the railroad as a carman in February of 1980.

4. From October of 2001 through March of 2004 I was the General Foreman in the CSXT Mechanical Department in Columbus, Ohio. My territory in my former position included the Marysville and East Liberty, Ohio, yards which are located adjacent to the Honda automobile manufacturing facilities in Marysville and East Liberty. I am familiar with the duties and responsibilities of carmen on each of the three shifts at both facilities.

5. CSXT receives empty tri-level auto rack railcars in Marysville and East Liberty that are utilized to transport new automobiles from the Honda facilities.

6. CSXT's operations in Marysville and East Liberty generally fall into the following categories:

   a. pre-inspection;

      b.    inspection and repair;

      c.    re-spotting; and

      d.    loading.

7.    Pre-inspection, inspection and repair occur when empty auto racks arrive at the two facilities. During these phases of CSXT's operations, CSXT carmen engage in activities including, but not limited to:

      a.    Inspecting the end doors of the auto racks;

      b.    Opening the end doors of the auto racks;

      c.    Walking and/or visually inspecting the three decks of the auto racks;

      d.    Stowing wheel chocks that are used to tie-down the new Hondas once they are loaded;

      e.    Removing debris from the decks;

      f.    Inspecting the decks of the auto racks;

      g.    Inspecting the brakes of the auto racks;

      h.    Inspecting bridge plates used to drive automobiles between auto racks;

      i.    Inspecting lubrication; and

      j.    Applying lubrication to various auto rack components as needed.

8.    Any defects noted during the pre-inspection and inspection process that cannot be repaired in at this time are noted and the entire rail car is "shop listed." Shop listed rail cars require more extensive repairs that can be accomplished by a carman in the Marysville and East Liberty yards, or on a siding.

9.    Cars that have been inspected and are not "shop listed" are re-spotted to the loading docks. Re-spotted cars are ready to be loaded with automobiles.

10.  In the loading phase, a third-party loads new Hondas onto the empty rail cars. This contractor is responsible for not only loading the cars, but also securing the wheel chocks.

12.  The doors on the fully loaded auto racks are then closed by CSXT carmen before being connected to a locomotive for transit to their next destination.

13.  This is a general description of the daily operations at CSXT's facilities in Marysville and East Liberty and is not intended to be an all encompassing description.

14.  I have had an opportunity to review in detail the videotape entitled "Railroad Work" which depicts former CSXT employees Charles Plantz and Dennis Boesken engaged in various activities at what appears to be CSXT's facilities in Marysville and East Liberty, Ohio.

15.  The "Railroad Work" videotape does not accurately depict the manner in which CSXT carmen at the Marysville and East Liberty facilities accomplish their duties and responsbilities.

16.  In the first scene of the videotape, Charles Plantz and Dennis Boesken are opening radial end doors on auto racks. It appears that the auto racks are located on the siding at or near the East Liberty yard. It is not clear whether the auto racks are in the "pre-inspection" phase, or whether these cars have been "shop listed."

17.  In the first scene, Charles Plantz climbs upon the first deck of an auto rack and pounds with a hammer in the vicinity of the radial end door's lock. If Mr. Plantz is in fact pounding on the door's lock, and not the deck of the auto rack, this activity would damage, or destroy the door's lock. CSXT carmen are not trained to engage in this activity and do not engage in such activity.

18.  In the second scene of the videotape, Mr. Plantz and Mr. Boesken are seen closing radial end doors. Again, it is not clear where these cars are located within CSXT's facilities, or within Honda's facilities. It is also not clear what phase of the operation these cars are in.

19. In the next scene of the videotape, the camera is driven through what is either the Marysville, or East Liberty loading ramps. This footage is taken on Honda property. The auto racks depicted in this footage have been through the pre-inspection, inspection and re-spotting phases of the operation and are ready to be loaded with new Hondas.

20. The next scene depicts the Mr. Plantz climbing to the third deck of an auto rack and footage of Mr. Boesken stowing chocks on the first deck of an auto rack. Because this auto rack has been re-spotted, it was ready to be loaded. This means that the chocks that Mr. Boesken is stowing would have been stowed before being moved to the loading docks. This implies that Mr. Boesken scattered the chocks throughout the deck of the auto rack.

21. It is clear from the footage in this scene that the cameraman is walking within the auto rack.

22. The next scene depicts Mr. Plantz and Mr. Boesken closing "rave" end doors. These doors represent a very small percentage of the end doors received at CSXT's facilties.

23. Next, the videotape depicts Mr. Boesken, with the assistance of Mr. Plantz, removing a used brake shoe and installing a new brake shoe. This activity is taking place in what appears to be the loading ramps at either Marysville or East Liberty. Brake shoes are generally not changed in this location for several reasons. First, the hand brakes are engaged on the auto racks when placed in the loading ramps. Second, when the hand brakes are engaged, it is difficult to remove a used brake shoe and install a new one. Additionally, the brake shoe removed by Mr. Boesken appears to be relatively new. A new, or relatively new brake shoe is difficult to remove particularly when the hand brakes are applied.

24. The next scenes depict Mr. Plantz and Mr. Boesken installing and removing an end of train device. This activity does not take place on a regular basis as only a few trains depart the

Marysville and East Liberty facilities on a daily basis. Furthermore, this activity generally only occurs on the second shift.

25. The next scene contains footage of both Mr. Plantz and Mr. Boesken stowing chocks within an auto rack. Once again, it is clear that the footage is taken in one of the loading ramps while the cameraman is within the auto rack.

26. I am familiar with David Baugus and the incident he alleges occurred on January 17, 2003 near the end of his shift.

27. With the exception of the footage of Mr. Plantz and Mr. Boesken opening radial end doors, the "Railroad Work" videotape does not accurately depict the activity Mr. Baugus alleges caused his injury. Furthermore, the footage of Mr. Plantz and Mr. Boesken opening radial end doors does not depict or re-create the event Mr. Baugus alleges caused his injury.

28. Segments of the "Railroad Work" videotape misrepresent the various phases of CSXT's operations at the Marysville and East Liberty facilities. For these various reasons, the "Railroad Work" videotape does not fairly and accurately depict the daily activities of carmen at these faciltiies.

21. Further Affiant sayeth naught.

_Jeffrey R. Hensley_
Jeffrey R. Hensley

Sworn to before me and subscribed in my presence this __14th__ day of September, 2004.

[SEAL]

_Suzanne M. McGibbeny_
Notary Public

SUZANNE M. McGIBBENY
Notary Public, State of Ohio
Commission Expires 10-18-05